### VON BAYER v. NINIGRET MILLS CO.

(Supreme Court, Appellate Division, First Department. March 15, 1912.)

BROKERS (§ 86*)—COMMISSIONS—RESCISSION OF CONTRACT—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for breach of a contract for commissions for securing a loan for defendant, which loan defendant refused to accept, *held* to show that defendant withdrew its proposition for a loan before the person secured by plaintiff to furnish the money had unqualifiedly accepted it, and insufficient to establish a cause of action.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

Appeal from Trial Term, New York County.

Action by Rudolf C. Von Bayer against the Ninigret Mills Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and MILLER, JJ.

William T. Keleher, for appellant.
Arnold Lichtig, for respondent.

LAUGHLIN, J. The plaintiff alleges that he was employed by the defendant on the 28th day of April, 1909, to secure a loan of $50,000, "more or less," to be secured by its first mortgage bonds under certain terms and conditions; that he "at all times duly kept and performed each and every covenant and condition of the said agreement upon his part to be kept and performed, and, pursuant to the said agreement, undertook and conducted negotiations with various persons, firms, and corporations, and performed work, labor, and services in connection with the securing of said loan, and obtained a large number of subscribers to the bonds of the defendant corporation, all of which was of great benefit and value to the defendant"; but that defendant failed to keep and wrongfully repudiated and broke the agreement, and that he thereby lost the benefit of his agreement and lost the time devoted by him in securing subscribers to the bonds of the defendant, to his damage in the sum of $20,000. The answer is, in effect, a general de-

nial. Without any amendment the complaint appears to have been re-
garded upon the trial as one for commissions, upon the theory of full
performance, and it was so submitted to the jury, and the recovery,
under the charge, was upon the theory that the plaintiff procured one
Sutro, who was ready, willing, and able to loan $50,000 to the de-
fendant on the terms upon which the plaintiff was employed to procure
it, and that he tendered the money or a certified check to the defend-
ant, but that it was refused. On full performance plaintiff would have
been entitled to a commission of 2½ per cent. on the amount of the
loan procured, or $1,250, on $50,000. He conceded a credit of $175.
An item of $475 claimed by defendant as a credit was in dispute, and
the jury found in favor of the defendant thereon, and awarded a ver-
dict for the balance, together with interest thereon.

The uncontroverted evidence shows that the attention of the plain-
tiff was drawn to the question of financing the defendant by its selling
agent in New York; that one Sutro manifested a willingness to make
a temporary loan to the defendant of $5,000 or $10,000, which was
the amount stated to be needed by its selling agent provided he received
a satisfactory report with respect to defendant; that a short time
thereafter plaintiff accompanied the selling agent to the defendant's
plant at Mystic, Conn., and after some negotiations with the presi-
dent and superintendent and others there, a meeting of the board of
directors was called on the 28th of April, 1909, and he verbally sub-
mitted a proposition to the company by which he was to secure a loan
of $50,000, more or less, and to receive a commission of 2½ per cent.
and the banker making the loan should receive a commission or bonus
of 10 per cent. payable in bonds, and 51 per cent. of the common stock
of the company; that the loan was to be secured by a first mortgage
bond issue on the plant at 6 per cent. per annum, payable annually, 10
per cent. of the bonds to be retired annually; and that the board of
directors accepted the proposition, and a formal resolution was adopted
authorizing the president to carry out the agreement. After that time
plaintiff had many consultations with Ledwidge, the secretary, O'Sul-
livan, the president, and Renner, the sales agent, of the company, about
the work he was doing and intended to do, and he prepared a report
in book form with respect to the company's assets and liabilities and
business, which he presented to Sutro. His version of what Sutro
said when the report was presented is as follows:

"He told me that if the conditions as outlined in the book were facts, and
I showed him that they were facts, and verified it by original facts as con-
tained in the book, he said if the company came up to the terms as agreed,
he would make the loan of $50,000, more or less."

The evidence shows that the defendant was desirous of obtaining
a loan immediately; that its plant was heavily mortgaged; that it had
some seven or eight lien creditors, and it desired to enlarge its plant
with a view to increasing its business; that Sutro never uncondition-
ally agreed to make the loan until after the defendant declared the deal
off on the 1st day of July, 1909; that the plaintiff never notified the
defendant until after said date that he had procured a party ready,
willing, and able to make the loan on the terms proposed; that the
plaintiff and Sutro entered into an agreement by which plaintiff was to

go to Mystic and there obtain subscriptions for the bonds upon an agreement by which part of the bonus which the banker was to receive was to be given to the subscribers, and the remainder was to be divided between him and Sutro, and, pursuant to this arrangement, he spent a large part of the time between said 28th day of April, 1909, and 10th day of July, thereafter, at and about Mystic, endeavoring to obtain such subscriptions, and interviewed more than one-half of the inhabitants, and represented to them generally that Sutro would not make the loan unless he succeeded in thus obtaining subscriptions for the bond issue; that he did in fact obtain subscriptions from the officers, stockholders, and creditors of the defendant company, and from the citizens of Mystic and vicinity for from $14,000 to $40,000 of the bonds; and that it was at Sutro's suggestion that the plaintiff negotiated with the lien creditors of the defendant to take bonds in payment of their claims, as Sutro did not wish to advance the cash to pay off such liens.

The plaintiff denies that Sutro was unwilling to make the loan unless he thus placed the bonds; but he concedes that in obtaining the subscriptions for the bonds he was acting both for Sutro and in his own interests, and that the proposition would be the more attractive to Sutro the larger the amount of the subscriptions he obtained for the bonds. Finally, according to the testimony of the plaintiff, it was agreed that the loan would be consummated on the 1st day of July, at Sutro's office, and he and Sutro had arranged to have attorneys in readiness to prepare papers for the bond issue *if needed*. At the time agreed upon for closing, no one representing the defendant came, and he was on that day informed by representatives of defendant that the deal was off because defendant decided that it was not a money-making proposition, and pointed to the ease with which the plaintiff had secured subscriptions for the bonds at Mystic, and stated that the defendant could itself thus raise the money, and that the terms which it had agreed to pay for the loan were out of all proportion, and they offered him a commission of 5 per cent. to "put the deal through under their own handling." At the request of plaintiff, he and the defendant's secretary and sales agent met at Sutro's office the next day, and defendant's secretary stated that defendant figured that it would have to come to New York to obtain a loan, but since the plaintiff was able to raise a considerable part of it at Mystic, it would be unwise for defendant "to pay the fee and give up the stock as they would if they dealt with Mr. Sutro," and Sutro, on being asked if he considered it a good proposition for defendant, replied that it certainly was not, if defendant could get the money cheaper at Mystic; and Sutro thereupon asked if they would accept his certified check, to which they replied that they would not take a check if offered to them, and this ended the negotiations. There was no tender of a certified check and no tender of the money, or demand that defendant perform. The money that was paid to plaintiff, according to the testimony given on the part of the defendant, was advanced or loaned at his request while he was soliciting subscriptions at Mystic, and this is only controverted by him to the extent that he claims that before the proposition of April 28, 1909, the defendant had agreed to pay him $300 for preparing a

report to be presented to Sutro, regardless of whether or not the same was accepted by Sutro.

The evidence on the part of the defendant tends to show that the condition upon which Sutro was willing to make the loan was that subscriptions by responsible parties in and about Mystic be first obtained for the bonds and placed in his hands; that these subscriptions might be payable in installments, but upon their being obtained and being presented to him and being found satisfactory he would advance the amount of the loan less commissions; that the plaintiff was not able to obtain subscriptions for the entire amount, but for only about $14,000 of the bonds, and many of the subscribers repudiated their subscriptions, and both he and Sutro abandoned the enterprise, and controverted the evidence with respect to the request whether certain officers of defendant would accept a certified check.

We are of opinion that the plaintiff failed to establish the cause of action alleged or any cause of action. In any view of the evidence, the defendant had withdrawn its proposition before there was an unqualified acceptance thereof by Sutro. Moreover, the preponderance of the evidence shows that Sutro was unwilling to make the loan unless subscriptions for the bonds were first obtained. If Sutro had been willing to make the loan unconditionally, it is highly improbable that the defendant would not have insisted upon receiving the money, and that its officers and creditors would have subscribed in large amounts for the bonds.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.