(164 App. Div. 698)

### VON BAYER v. NINIGRET MILLS CO.   (No. 6385.)

(Supreme Court, Appellate Division, First Department.   December 4, 1914.)

1. BROKERS (§ 86*)—PROCURING LOAN—PERFORMANCE OF EMPLOYMENT—EVIDENCE.

 In a broker's suit to recover commissions for obtaining a loan for defendant corporation, evidence *held* insufficient to justify a verdict finding that plaintiff had procured a person ready, able, and willing to make the loan, and had tendered full performance, before defendant notified him that the transaction was at an end.

 [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

2. BROKERS (§ 88*)—ACTION FOR COMPENSATION—QUESTION FOR JURY.

 Where, in a broker's action to recover commissions, the evidence was insufficient to show performance of the broker's contract before his employment was terminated, defendant's motion for a dismissal on that ground at the close of plaintiff's case should have been granted.

 [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 121, 123–130; Dec. Dig. § 88.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Rudolph C. Von Bayer against the Ninigret Mills Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed and dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Hartwell Cabell, of New York City, for appellant.

Clarence U. Carruth, of New York City, for respondent.

LAUGHLIN, J.  The plaintiff has recovered a commission of 2½ per cent., less certain credits for amounts advanced, on the theory that, pursuant to a contract of employment, he procured a party ready, willing, and able to make a loan of $50,000 to the defendant. On a former trial plaintiff recovered on substantially the same basis; but the judgment was reversed, and a new trial granted by this court. 149 App. Div. 578, 134 N. Y. Supp. 116. We held that the evidence then before the court failed to show that the plaintiff established a cause of action, and that the defendant had withdrawn its proposition to plaintiff to obtain a loan before there was an unqualified acceptance thereof by the party plaintiff claimed to have procured; and we also held that the preponderance of the evidence showed that the party was unwilling to make the loan unless subscriptions for the bonds of the company, which were to be issued to him for the loan, were first obtained.

[1] The general nature of the case is sufficiently stated in the opinion of the court on the former appeal. The evidence with respect to the agreement between the plaintiff and the defendant is the same as on the former appeal. The original complaint was for $20,000 damages for terminating the contract before the plaintiff was able to perform it, by which the plaintiff lost the benefit of the agreement and his time, to his damage in the sum claimed; but the first trial and recovery were had on the theory of commissions, without amending the complaint. We commented on this on the former appeal, and on the last trial the complaint was amended so as to claim commissions earned as for full performance.

The first recovery was on the theory that the plaintiff procured one Sutro, who was ready, able, and willing to make the loan, and that he tendered the money, or a certified check, but that it was refused. We held that the evidence failed to show a tender, and that Sutro had only conditionally agreed to make the loan. On the new trial no evidence was offered with respect to a tender. On the former trial the plaintiff did not testify that he had notified the defendant, before it withdrew its proposition, that Sutro had accepted the proposition, and was ready, able, and willing to make the loan, and had authorized him to arrange a meeting for closing. On that trial, with respect to this, he merely testified that he arranged for an appointment between Sutro and the officers of the company, and that "there was a closing arranged at Mr. Sutro's office," and that he and Sutro were there, but that no one appeared for the defendant; that he telephoned to the defendant's office, and its sales agent told him that the deal was off, and that the

company had decided that it was not a money-making proposition, and that he was requested to go to the defendant's office with a view to making another arrangement; that he did go to the office, and at his request a meeting was arranged for next day at Sutro's office; that pursuant to this appointment the secretary and sales agent of the defendant met him and Sutro, and the secretary explained that the reason the company had determined to abandon the negotiations was, in effect, that instead of obtaining a straight loan, as was originally intended, the plan had resolved itself into an arrangement for underwriting the bonds in advance for the protection of Sutro, in which the company, through its officers and creditors, were to participate, which the company had decided was not a good business proposition, and had therefore determined to abandon it, and that thereupon, without tendering money or a check, or saying that he would do so, Sutro asked the secretary if his certified check for $50,000 would be accepted, and the secretary and sales agent said that they would not take the check if offered. On the new trial, with respect to that interview, Sutro testified that he stated that he was ready, able, and willing to make the loan, and that the representatives of the defendant refused to proceed further, and he was corroborated by the plaintiff; but the defendant's representatives testified that Sutro refused to make the loan.

On the former trial it appeared that Sutro was unwilling to advance any money, and that he and the plaintiff entered into an arrangement by which it was expected that the money that he was to loan to the defendant would be procured from subscribers to the bonds, and to that end he engaged plaintiff to go to Mystic, Conn., where the plant of the company was, and there obtain from officers, stockholders, and creditors of the company, and from others, subscriptions for the bonds, on the understanding that 10 per cent. of the bonds, which Sutro was to receive from the defendant as a bonus, and 51 per cent. of the stock, which he was also to receive as a bonus, were to be divided between him and the plaintiff and the subscribers for the bonds, and that pursuant to that arrangement plaintiff negotiated with lien creditors of the defendant to take bonds in payment of their claims and obtained certain subscriptions for bonds, and that the defendant co-operated in obtaining such subscriptions. On the new trial the plaintiff testified that he induced subscriptions for bonds on an offer that the subscribers would receive from 25 to 100 per cent. of the amount of bonds subscribed in capital stock of the company; and some of the subscriptions, which are in writing, expressly show this, and others show it by a provision that the subscriptions were upon conditions or understandings verbally agreed upon between the subscribers and the plaintiff.

Sutro, by his testimony in the record now before the court, denies that he agreed to share any part of his stock with the subscribers for bonds, and according to the testimony of the plaintiff in this record he did not know whether the stock he had agreed to give the subscribers was to come from the stock to be given to Sutro as a bonus, or from the remaining 49 per cent. of the capital stock of the company, or from what source it was to come. There was no agreement on the part of the defendant to furnish or to deliver any stock, other than the

51 per cent. which was to go to Sutro as a bonus. Sutro testified that his purpose in exacting a bonus of 51 per cent. of the capital stock of the company was to obtain actual stock control of the company, and that he intended to retain such control. It is manifest that the subscriptions for the bonds, which ran to the plaintiff, could not have been enforced without the delivery of the stock to the subscribers pursuant to the agreements made with them by the plaintiff, and inasmuch as defendant was not obliged to furnish the stock, and Sutro, according to his testimony, would not have done so, the subscriptions for the bonds would not have accomplished the purpose intended by Sutro.

According to the testimony of Sutro, he was ready, able, and willing to deliver $50,000 for a trust company, which it was expected would take the mortgage to secure the bonds; but he did not offer to defendant, or any one representing it, to do so, and he testified that he expected that the trust company, before paying over the money to the defendant, would pass upon the validity of the subscriptions for the bonds which the plaintiff had obtained, and he would not have authorized the trust company to pay over the money to the defendant unless it found that the subscriptions were valid and enforceable, for he expected to be reimbursed from that source. The effect of this testimony is not destroyed by Sutro's subsequent testimony to the effect that he accepted and was willing to take chances on the validity of the subscriptions and on enforcing them. Not only was no tender of the loan made or rejected, but the papers had not been prepared for execution, and there was no demand by either plaintiff or Sutro that defendant prepare or present the bonds or mortgage, or to consummate the contract, and the negotiations had not proceeded to a point where there was a complete enforceable agreement for the loan.

The plaintiff, therefore, failed to show full performance of his contract, which was essential to entitle him to recover the commissions. Not only this, but he has failed to show that the defendant, which was in need of the money for immediate use, could have obtained it from Sutro under the agreement pending when it broke off negotiations, which might have afforded him a cause of action for damages for breach of contract. If defendant had continued the negotiations, it is improbable that it would have obtained the loan, for the reason that the subscriptions to the bonds were conditional on the subscribers' receiving stock which no one, other than the plaintiff, had promised that they should have, and as he had no stock, and controlled none, he was not in a position to perform his agreement with them; and Sutro would not have furnished the stock and would not have permitted payment of the money to defendant until the trust company investigated and approved the subscription and "an accountant and attorney and a trust company investigated and determined whether the statements and representations made to him were true," which had not been done, nor until, as he said, "everything was arranged legally and satisfactory." Neither at nor prior to the time the negotiations were broken off had this question, with respect to who was to furnish the stock to be delivered to the subscribers to the bonds, arisen, and it is therefore claimed on the part of the respondent that it afforded no defense to this action,

The respondent also claims that Sutro was mistaken in thinking—as his testimony in the present record shows he did—that the stock that was to go to the subscribers was to come from the remaining 49 per cent. of the capital stock of the defendant; and it is also argued that Sutro could have maintained control of the company without keeping 51 per cent. of the stock, owing to the fact that all of the stock had not been issued. Sutro, however, says he intended to keep the 51 per cent. of the stock.

The burden was upon the plaintiff of showing that he had procured a customer ready, able, and willing to make the loan on the terms upon which he was authorized to procure it, so that, if defendant had not refused to proceed, it would have received the loan of money as desired unconditionally then and there, if, indeed, an actual tender and rejection of the loan was not essential. In this we think he failed, notwithstanding the fact that the question with respect to who was to furnish the stock to be delivered to the subscribers to the bonds had not arisen, for it was inevitable that that question would have arisen if the negotiations had proceeded, and, according to the testimony of Sutro, he would not have authorized the trust company to deliver the money to the defendant if it involved his parting with any of the 51 per cent. of the stock which he was to receive as a bonus, and he would not have authorized the delivery of the money to the defendant by the trust company unless the subscriptions were bona fide and the conditions had been complied with, and he expected the trust company to investigate and determine this question. He was only ready to deliver the money to the trust company upon the condition that the subscriptions be delivered to it, and that their validity should be passed upon by it; and he says that "the conditions would have to be ratified and confirmed," and by this he doubtless referred to the investigation and determination with respect to the statements and representations made to him.

According to the evidence now in the record, after the plaintiff interested Sutro, the latter went to Mystic and investigated the finances and prospects of the company, and then agreed to make the loan of $50,000, provided the plaintiff would obtain subscriptions from others in advance for something more than one-half the amount of the bonds. Although the defendant was aware of that agreement, and consented to the plan of having part of the bonds so underwritten before the loan was to be made, and assisted in obtaining subscriptions, it was not a party to the agreement between plaintiff and Sutro; nor, as already observed, did it in any manner become obligated to furnish the stock which plaintiff agreed to give to the subscribers. At most, it merely waited for a period, and through its officers assisted the plaintiff in obtaining subscriptions.

Under the charge by which the case is submitted to the jury, the plaintiff was permitted to recover provided the jury were satisfied that Sutro was ready, able, and willing to deliver $50,000 to the trust company, and the conditions upon which, according to Sutro's testimony, he was ready to deliver the money to the trust company, namely, that the money was not to be paid over to the defendant until the trust company had passed upon the bona fides of the subscriptions, and had,

in effect, accepted them after investigation, were disregarded. It is quite clear that the verdict cannot be sustained.

[2] The remaining question is: Should there be a new trial, or should the complaint be dismissed? At the close of the plaintiff's case, counsel for defendant moved for a dismissal of the complaint, upon the ground that the plaintiff had failed to establish the cause of action alleged in the complaint, or any cause of action, and in support of that motion stated:

"The point I want to make is that the burden is upon the plaintiff to show that he had a person there actually willing to take up the proposition as it then stood; and the testimony of the person who was supposed to have done that has upset that theory entirely. He says he was willing to do it provided everything was all right, but there is no testimony here that it was all right."

That motion, which pointedly presented the vital question in this case, was denied, and an exception duly taken. The motion was renewed on tne same grounds at the close of the evidence, and denied, and an exception taken. We are of opinion that, as matter of law, the plaintiff was not entitled to recover under the contract for commissions, for he did not show full performance, and therefore the court erred in denying the motion to dismiss the complaint.

It follows that the judgment and order should be reversed, with costs to appellant, and the complaint dismissed, with costs. All concur.